# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : | No. 4:17-CV-00545 |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| PERMANENT EASEMENT FOR 0.16 ACRES, TEMPORARY EASEMENTS FOR 0.55 ACRES, AND TEMPORARY ACCESS EASEMENT FOR 7.75 ACRES IN COAL TOWNSHIP, NORTHUMBERLAND COUNTY, PENNSYLVANIA, TAX PARCEL NUMBER 00A-00-068-041, MAIN STREET (SR 2026), COAL TOWNSHIP, NORTHUMBERLAND COUNTY, PENNSYLVANIA | : | |
| | : | |
| SUSQUEHANNA COAL COMPANY, | : | |
| | : | |
| AND ALL UNKNOWN OWNERS, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

AUGUST 9, 2017

## I.    BACKGROUND

On March 28, 2017, Plaintiff, Transcontinental Gas Pipe Line Company, LLC, hereinafter "Transco," filed a complaint in condemnation pursuant to Federal Rule of Civil Procedure 71.1 and the Natural Gas Act, 15 U.S.C. § 717.  Previously, on

1

February 3, 2017, the Federal Energy Regulatory Commission, hereinafter

"FERC," granted Transco a certificate of public convenience and necessity.

Transco filed suit after proving unable to negotiate the amount of compensation to

be paid for the right-of-way with the Defendants in order to construct, operate and

maintain a pipeline for the Atlantic Sunrise Project; construct new and make

modifications to existing compressor stations; construct new and make

modifications to existing meter stations; make modifications to existing regulator

stations; and make modifications to existing mainline valve locations in South

Carolina, North Carolina, Virginia, Maryland, and, as largely relevant here, 199.5

miles through Pennsylvania.[1]

On April 12, 2017, Transco filed a motion for partial summary judgment and,

subsequently on June 29, 2017, a motion for preliminary injunction.[2] A hearing

was held on these motions on August 3, 2017. After taking testimony and hearing

argument, both motions are granted.

## II.   DISCUSSION

### a. Partial Summary Judgment will be granted in Transco's favor.

Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] 15 U.S.C.A. § 717f (h)
[2] ECF Nos. 8 and 16.

matter of law."[3] A fact is "material" where it "might affect the outcome of the suit under the governing law."[4] A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party."[5]

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.[6] The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[7]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[8] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations,

---

[3] Fed. R. Civ. P. 56(a).
[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[5] *Id.*
[6] *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).
[7] *Id.* at 331.
[8] *Anderson*, 477 U.S. at 250.

or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[9]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[10] Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[11]

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.[12] Credibility determinations are the province of the factfinder, not the district court.[13] Although the court may consider any materials in the record, it need only consider those materials cited.[14]

With that standard of review in mind, Section 717f(h) of the Natural Gas Act grants the right of eminent domain for construction of pipelines, as follows:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of

---

[9] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.
[10] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 233 (3d Cir. 2003).
[11] Fed. R. Civ. P. 56(e)(2).
[12] *Anderson*, 477 U.S. at 249.
[13] *BWM, Inc. v. BMW of N. Am., Inc*., 974 F.2d 1358, 1363 (3d Cir. 1992).
[14] Fed. R. Civ. P. 56(c)(3).

property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

"To condemn the easements at issue, [the gas company] must demonstrate (1) it holds a FERC certificate of public convenience and necessity; (2) the rights-of-way to be condemned are necessary for the construction, operation, and maintenance of the pipeline; and (3) it has been unable to acquire the proposed rights-of-way from the landowner."[15]  "[A] certificate of public convenience and necessity [therefore] gives its holder the ability to obtain automatically the necessary right of way through eminent domain, with the only open issue being the compensation the landowner defendant will receive in return for the easement."[16]

---

[15] *Columbia Gas Transmission, LLC v. An Easement To Construct,* No. CV 16-1243, 2017 WL 544596, at *3 (W.D. Pa. Feb. 9, 2017)
[16] *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Tp., York County, Pa., et. al*, 768 F.3d 300, 304 (3d Cir. 2014).

Defendants' argue generally that "Plaintiff's motion for partial summary judgment is premature because Defendants and similarly situated landowners have been denied the opportunity to challenge the FERC Order and its findings."[17] However, this argument fails because "a certificate of public convenience and necessity gives its holder the ability to obtain automatically the necessary right of way through eminent domain;"[18] "this court's role is mere enforcement."[19]

Defendants also argue that Transco did not negotiate in good faith. Defendants' argument as to "good faith" negotiations fails, as well. Although "some courts have imposed a requirement that the condemnor engage in good faith negotiations"[20] I have never imposed a "good faith" requirement. Moreover, "the United States Court of Appeals for the Third Circuit has not yet taken a position on the matter, and federal district courts in Pennsylvania have refused to impose a good faith requirement."[21] Additionally, "the plain language of the NGA does not

---

[17] Def. Br. at 6.
[18] *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Twp., York Cty., Pa., Located on Tax ID #440002800150000000 Owned by Brown*, 768 F.3d 300, 304 (3d Cir. 2014), *cert. denied sub nom. Brown v. Columbia Gas Transmission, LLC*, 135 S. Ct. 2051, 768 F.3d 300 (3d Cir. 2015).
[19] *Tennessee Gas Pipeline Co. v. Massachusetts Bay Transportation Authority*, 2 F.Supp.2d 106, 110 (D.Mass.1998).
[20] *UGI Sunbury LLC v. A Permanent Easement for 0.4944 Acres*, No. 3:16-CV-00783, 2016 WL 3254986, at *6 (M.D. Pa. June 14, 2016) (Brann, J.).
[21] *Id.*

impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain."[22]

In their brief, Defendants further argue that they were denied the opportunity to be heard by FERC.  But they offer no substantive evidence to support this unfounded allegation.

FERC provided the landowners with multiple opportunities to be heard.  The relevant dates are as follows.  On March 31, 2015, Transco filed a project application.  On October 22, 2015, FERC sent a letter to affected landowners. On May 5, 2016, FERC issued an Environmental Impact Statement.  The public comment period ran for 45 days, from May 12, 2016 to June 27, 2016.  Between June 13 and 16, 2016, FERC held four public comment meetings.  On October 13, 2016, FERC sent landowners letters regarding two alternative pipeline routes.  The public comment period ran for 30 days. On November 3, 2016, FERC issued a comment for a draft General Conformity Determination. On December 30, 2016, FERC issued a final Environmental Impact Statement.  Finally, on February 3, 2017 FERC authorized the Atlantic Sunrise Project and granted Transco a certificate of public convenience and necessity.

---

[22] *Id. citing Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres,* 2008 WL 4346405 at *13 n. 3 (W.D. Pa. Sept. 19, 2008) (Gibson, J.) *(citing Kansas Pipeline Company v. A 200 Foot By 250 Foot Piece of Land,* 210 F.Supp.2d 1253, 1257 (D. Kansas 2002)).

The FERC certificate of public convenience and necessity lists timely and untimely intervenors.[23] Here, Defendants did not attempt to intervene during the FERC proceedings. For Defendants to argue that they did not have the opportunity to be heard is disingenuous. FERC provided Defendants and others fifteen months, two public comment periods, and four public comment meetings during which they had the opportunity to be heard. It strains credulity to suggest otherwise.

Defendants also argue that the project is not for "public use" and disagree with the proposed route. Any challenge as to "public use" and/or the route this pipeline will take, could have, and more importantly, should have been taken up with FERC in the first instance.[24] "When a property owner comes to federal court to challenge FERC's findings in the certificate of public convenience and necessity, the property owner thereby mounts what in essence is a collateral attack on that certificate."[25] "The validity and conditions of the FERC Certificate cannot be

---

[23] Plaintiff's Exhibit 1 at August 3, 2017 preliminary injunction hearing, pages 73 and 79.
[24] *See e.g. Guardian Pipeline*, *infra*, 2008 WL 1751358, at *16 n. 6; *Portland Natural Gas Transmission Sys. v. 4.83 Acres of Land*, 26 F.Supp.2d 332, 339 (D.N.H.1998), *Millennium Pipeline Co. v. Certain Permanent & Temp. Easements*, 777 F. Supp. 2d 475, 480-481 (W.D.N.Y. 2011), *aff'd sub nom. Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in Thayer Rd., S.B.L. No. 63.00-1-24.1, Town of Erin, Cty. of Chemung, N.Y.*, 552 F. App'x 37 (2d Cir. 2014).
[25] *Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, 2008 U.S. Dist. LEXIS 71302, 13-14 (W.D. Pa. Sept. 19, 2008) (Gibson, J.).

collaterally attacked in district court."[26] "Review of the validity of the certificate is

the exclusive province of the appropriate court of appeals."[27]   Accordingly,

arguments regarding "public use" should have been made to FERC; they now may

be made to the United States Court of Appeals for the Third Circuit.  This

argument is not properly before this Court.

The Defendants also request a stay of the FERC Order.  However, "A party

is not ordinarily granted a stay of an administrative order without an appropriate

showing of irreparable injury."[28]   "A certificate of public convenience and

necessity gives its holder the ability to obtain automatically the necessary right of

way through eminent domain, with the only open issue being the compensation the

landowner defendant will receive in return for the easement."[29] Because the

certificate of public convenience and necessity has previously been awarded giving

Transco the right of way, and because just compensation will be awarded at a later

date, there is no irreparable injury here.[30]

---

[26] *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir.1989), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990).
[27] *Id.*
[28]  *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 773-774, 88 S. Ct. 1344, 20 L. Ed. 2d 312 (1968).
[29] *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Twp., York Cty., Pa., Located on Tax ID #440002800150000000 Owned by Brown*, 768 F.3d 300, 304 (3d Cir. 2014), *cert. denied sub nom. Brown v. Columbia Gas Transmission, LLC*, 135 S. Ct. 2051, 768 F.3d 300 (3d Cir. 2015).
[30] *See also Millennium Pipeline Co., L.L.C., supra,*  (Landowner would not likely suffer irreparable harm in absence of stay pending appeal of non-money judgment entered in favor of natural gas pipeline company and order granting company permanent easement across landowner's property, pursuant to NGA, since landowner's injury from company's alleged plan to

Finally, Defendant Susquehanna Coal Company argues that Transco set forth a "restriction against surface mining operations which use blasting within fifteen-hundred (1500) feet of the pipeline, effectively widening the area of the permanent taking by sixty times and preventing the Defendant from engaging in the development of its property and its mineral resources."[31] The concern about blasting is, again, an argument that should have been made to FERC. FERC could have issued the certificate of public convenience and necessity with conditions favorable to Susquehanna Coal Company; the Defendant did not intervene in the FERC proceedings, however, nor did it seek rehearing.[32]

FERC has, on multiple occasions, expressly conditioned certificates of public convenience and necessity based on concerns raised by coal companies. For example, in an action involving a pipeline constructed between Missouri and Ohio, the United States Court of Appeals for the Sixth Circuit wrote: "FERC issued the certificate subject to several conditions, one of which required the pipeline company to 'collaborate with the coal companies to develop a construction and operations plan' addressing 'pipeline integrity and operation' for the portion of the pipeline that runs over the mine."[33] In another action before the Sixth Circuit

---

expand pipeline on owner's property would be remedied by damages award for just compensation at future trial on landowner's takings claim.)

[31] Def. Br., ECF No. 12 at 8-9.

[32] Pl. Br., ECF No. 14 at 8.

[33] *Am. Energy Corp. v. Rockies Exp. Pipeline LLC*, 622 F.3d 602, 604 (6th Cir. 2010).

involving different parties and a different pipeline, that court wrote: "FERC concluded that it was unnecessary to reroute the pipeline around the Century Mine because REX [the plaintiff gas company] had proposed an adequate framework for a subsidence mitigation plan and had agreed to cover all costs associated with 'monitoring or mitigation of the pipeline should mining advance in close proximity to the pipeline,' including the cost of moving the pipeline to avoid damage from mining."[34] "FERC also concluded that REX's proposal was 'adequate to ensure safety' and would not 'compromise longwall coal mining operations in the area.'"[35]

In another case, the Western District of Virginia explained that a certificate of public convenience and necessity was conditioned on environmental conditions which included a condition that that plaintiff gas company 'work with' several coal companies to avoid the disruption of mining operations: "Anker Mining ... is planning to commence construction of a coal mining operation that would be located between approximate MPs 0.5 and 3.8."[36] "Construction is expected to start in 2006, with partial operations beginning in 2007, and full operation in 2008."[37] "Norton Coal recently received approval to develop a 388-acre surface

---

[34] *Rockies Exp. Pipeline LLC v. 4.895 Acres of Land, More or Less*, 734 F.3d 424, 426 (6th Cir. 2013).
[35] *Id.*
[36] *E. Tenn. Nat. Gas, LLC v. 1.28 Acres in Smyth Cty., Va.,* No. CIV.A. 1:06-CV-00022, 2006 WL 1133874, at *2 (W.D. Va. Apr. 26, 2006).
[37] *Id.*

mine expansion approximately 2,000 feet west of MP 2.0."[38] "East Tennessee would continue to work with these operators to avoid areas containing potentially exploitable mineral resources, or any areas of former subsurface mining activities where shafts or cavities may be present."[39] Given FERC's history of setting conditions in certificates of public convenience and necessity favorable to other coal mining companies, it is inexplicable as to why Defendant Susquehanna Coal Company did not raise its concerns to FERC prior to the issuance of the certificate here.

In the case at bar, I find that there is no genuine issue of material fact as to the three conditions precedent. First, FERC has issued a certificate of public convenience and necessity to Transco, a natural gas company as defined by the Natural Gas Act 15 U.S.C. § 717a(6). Second, the rights-of-way to be condemned are necessary for the construction, operation, and maintenance of the pipeline. "By issuing the Certificate [of public necessity] to [Plaintiff], FERC has determined that the Subject Property is necessary to the operation of the Pipeline[; t]his determination cannot be challenged by Defendants."[40] Finally, despite its attempts

---

[38] *Id.*
[39] *Id.*
[40] *WBI Energy Transmission, Inc.*, No. CV 14-130-BLG-SPW, 2017 WL 532281, at *3 (D. Mont. Feb. 8, 2017) *citing Williston Basin Interstate Pipeline Company v. Property Interests Located in Carbon County, Montana*, 2010 WL 5104991 (D. Mont. 2010) ("By issuing the Certificate of Public Convenience and Necessity under the Natural Gas Act, FERC has already determined that Defendants' property interests are necessary. Defendants have not offered any arguments to the contrary, and even if they did, such arguments would be an improper collateral

through negotiations, Transco has been unable to acquire the proposed rights-of-way from the landowner.  Accordingly, partial summary judgment will be entered in favor of Transco.

### b.  A preliminary injunction will be entered in Transco's favor.

Because of the unique procedures associated with federal condemnation actions arising under the Natural Gas Act, Plaintiff must first establish that it has a substantive right to condemn the property at issue. Once a substantive right has been found, a court "may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction" pursuant to Federal Rule of Civil Procedure 65, which governs the granting of preliminary injunctions.[41] "The [Natural Gas Act] does not allow for 'quick take' powers; in a condemnation action under the Act, we must evaluate access to property under the preliminary injunction rubric of Federal Rule of Civil Procedure 65(c)."[42]   Rule 65 provides in pertinent part:

**(a) Preliminary Injunction.**

---

attack on the FERC certificate."); *Williams Natural Gas Co. v. City of Oklahoma City* 890 F.2d 255, 262 (10th Cir. 1989); *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F.Supp.2d 1253, 1256 (D. Kan. 2002) ("Once the holder of a FERC certificate of public convenience and necessity asks a district court to enforce its right to condemn, the findings of the FERC certificate are treated as conclusive.").

[41] *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004); *see also Constitution Pipeline Co., LLC. v. A Permanent Easement for 1.92 Acres*, 2015 WL 1219524, *2 (M.D. Pa. March 17, 2015).

[42] *Columbia Gas Transmission, LLC v. An Easement To Construct*, No. CV 16-1243, 2017 WL 544596, at *4 (W.D. Pa. Feb. 9, 2017)

**(1)** *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

**(2)** *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial

. . .

**(c) Security.** The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

"It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial or on the merits.'"[43] "A preliminary injunction[, however,] is an extraordinary remedy never awarded as of right."[44]

Generally, a party seeking a preliminary injunction must establish four factors: (1) a reasonable probability of success on the merits of their argument; (2) irreparable harm to the movant in the absence of relief; (3) granting the preliminary injunction will not result in greater harm to the nonmoving party; and (4) the

---

[43] *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (*citing University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).
[44] *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008).

public interest favors granting the injunction.[45] The United States Court of Appeals for the Third Circuit has recently clarified the standard. "A movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief."[46] "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."[47] In the case at bar, the four factors favor entering the preliminary injunction as requested by Transco.

First, Transco has succeeded on the merits. Unlike preliminary injunctions in other types of civil actions, those sought in condemnation cases also request an entry of judgment on the merits contemporaneously with the motion for preliminary injunction. Defendants argue in their brief that because "the certificate [of public use and necessity] is currently being challenged by a number of landowners and environmental groups"[48] that Transco should not be granted

---

[45] *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).
[46] *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).
[47] *Id.*
[48] Def. Br.

immediate possession of the property. However, it is not an abuse of discretion for the district court to hold that a gas company is entitled to immediate use and possession if, as above, I have thoroughly explored and explained why Transco does have the substantive right to condemn.[49] Therefore, given the above grant of partial summary judgment finding Transco's substantive right to condemn, the likelihood of success on the merits is established. Accordingly, this factor favors Transco.

Second, Transco will suffer irreparable harm in the absence of preliminary relief. In their brief opposing the motion, Defendants argue that the only harm in not granting the motion is monetary harm. This is not the case. In fact, Transco set forth several examples of irreparable harm both in its papers and at the hearing. The first is monetary. Transco contends non-possession will cost it $500,000 per month, and will delay revenues of thirty-three million dollars ($33,000,000) per month because Transco needs possession in order to begin construction. Defendants argue in their brief that these values are speculative. Defendants are correct in one respect, as "purely speculative harm will not suffice, but rather, a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative and will be held to have satisfied his burden."[50]

---

[49] *See e.g. All. Pipeline L.P. v. 4.360 Acres of Land, More or Less, in S/2 of Section 29, Twp. 163 N., Range 85 W., Renville Cty., N.D.*, 746 F.3d 362, 369 (8th Cir. 2014)
[50] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

However, the testimony of David Sztroin, hereinafter "Mr. Sztroin," the pipeline project manager for the Atlantic Sunrise Project, is consistent with Transco's assertions.   Accordingly, I respectfully disagree with Defendants assertion. Although one may never know precise value to be attributed to any further delay in Transco's possession of the subject property, Transco has shown a significant risk of irreparable harm that is more than merely speculative. Thus Transco has met its burden.

The next type of irreparable harm set forth by Transco is that it will breach contracts with both subcontractors and vendors if it cannot possess the subject properties in a timely fashion.  The contract with shippers is designed so that the pipeline is in service by the 2017-2018 winter heating season. Mr. Sztroin testified that the contracts with shippers were a prerequisite to filing with FERC, and Transco would break contracts with the shippers if it was not permitted to enter the property by August 18, 2017.  I note that this argument also cuts against Plaintiff, as Transco has acknowledged that delays in obtaining the FERC certificate have already caused it to miss that deadline; the current anticipated completion date for the project is now July 2018.[51]  On the other hand, Transco argues that its "in use" date will continue to be pushed back if possession is not ordered by August 18,

---

[51] Testimony of Sztroin at August 3, 2017 hearing.

2017.  Mr. Sztroin explained that each delay would have a "domino effect" that delays the entire project.

Transco also argues that it will experience other substantial delays in completion of this project if it is not granted access.  It asserts in its brief, and Mr. Sztroin testified consistently, that non-possession could set the construction project back an entire year because it must conduct surveys on endangered and threatened wildlife species that are only permitted during certain dates each year. Additionally, certain work must be completed in Pennsylvania prior to the annual October deadline for work on wild trout streams.  Specifically, Transco must install in-stream supports for equipment bridges prior to October 1, 2017.

In sum, the Atlantic Sunrise Project is large in both scope and geography, spanning five states.  "The magnitude of the Project requires a complex and coordinated construction process, with work activities being performed in sequential phases"[52] Each piece of the construction puzzle depends on the prior piece timely placed. Untimeliness in one small part of this enormous project would result in a domino effect on the timeliness of all other areas of the project.  This factor weighs strongly in favor of Transco.

Third, granting the preliminary injunction will not result in greater harm to the landowner, despite Defendants arguments to the contrary in their brief.

---

[52] *Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cty. Florida*, No. 3:16-CV-274-TJC-JBT, 2016 WL 3188985, at *3 (M.D. Fla. June 8, 2016)

Transco has the substantive right to possession. Defendants argue that if the preliminary injunction is granted, they lose the right to the "use and enjoyment of their property" and granting the motion will "change the status quo."[53] However, these are simply "timing arguments because productive capacity would still be disturbed, albeit at a later time, if just compensation was determined first."[54]

"The Fifth Amendment guarantees the landowners just compensation for their land no matter when the condemnor takes possession."[55] "We fully understand that condemnation often forces landowners to part with land that they would prefer to keep for many reasons, including sentimental ones."[56] "However, the Supreme Court long ago recognized that 'in view of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it ... is properly treated as part of the burden of common citizenship.'"[57]

It is commonplace for district courts to order immediate possession after FERC has taken a lengthy period of time determining whether or not to issue a certificate of public convenience and necessity. "District courts in a number of jurisdictions grant immediate possession in the form of a preliminary injunction to

---

[53] Def. Br.
[54] *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 829 (4th Cir. 2004)
[55] *Id.*
[56] *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890).
[57] *Id citing Kimball Laundry Co. v. United States*, 338 U.S. 1, 5, (1949).

a gas company that has established its right to condemn under the [Natural Gas Act]."[58]

Moreover, "the court does not have jurisdiction to review a collateral attack on the FERC certificate."[59] "When a property owner comes to federal court to challenge FERC's findings in the certificate of public convenience and necessity, the property owner thereby mounts what in essence is a collateral attack on that certificate."[60] "District courts have limited jurisdiction in Natural Gas Act condemnation actions."[61] "This court's role is mere enforcement."[62]

---

[58] *Tennessee Nat. Gas Co. v. Sage*, 361 F.3d at 827 *citing Northwest Pipeline Corp. v. The 20' by 1,430' Pipeline Right of Way*, 197 F.Supp.2d 1241, 1245 (E.D.Wash.2002)("[w]here there is no dispute about the validity of [the gas company's] actual right to the easement," denying authority to grant immediate possession "would produce an absurd result"); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Ill.2002)(immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D.Ill.2000)(same); *see also N. Border Pipeline Co. v. 127.79 Acres of Land,* 520 F.Supp. 170, 173 (D.N.D.1981) ("the Court believes the circumstances of this case warrant the exercise of inherent powers"); *Williston Basin Interstate Pipeline Co. v. Easement and Right–of–Way Across .152 Acres of Land*, 2003 WL 21524816 (D.N.D.2003)(same); *Tenn. Gas Pipeline Co. v. New England Power, Inc*., 6 F.Supp.2d 102, 104 (D.Mass.1998)(same); *USG Pipeline Co. v. 1.74 Acres*, 1 F.Supp.2d 816, 825–26 (E.D.Tenn.1998)(same); *Kern River Gas Transmission Co. v. Clark County*, 757 F.Supp. 1110, 1117 (D.Nev.1990)(same); *Humphries v. Williams Natural Gas Co*., 48 F.Supp.2d 1276, 1280 (D.Kan.1999)("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the Natural Gas Act]."); *Rivers Electric Co., Inc. v. 4.6 Acres of Land*, 731 F.Supp. 83, 87 (N.D.N.Y.1990)(granting immediate possession under a statute similar to the Natural Gas Act). *Cf. Commercial Station Post Office, Inc. v. United States*, 48 F.2d 183, 184–85 (8th Cir.1931)(holding that government officer who exercises statutory authority to file condemnation action may take immediate possession of the property even though there is no express provision authorizing pre-judgment possession).

[59] *Williams Natural Gas Co. v. City of Okla. City*, 890 F.2d 255, 262 (10th Cir. 1989).

[60] *Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, 2008 U.S. Dist. LEXIS 71302, 13-14 (W.D. Pa. Sept. 19, 2008) (Gibson, J.).

[61] *Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cty. Florida*, No. 3:16-CV-274-TJC-JBT, 2016 WL 3188985, at *2 (M.D. Fla. June 8, 2016), *see also* 15 U.S.C.A. §

For these reasons, this factor favors Transco.

Fourth, granting the preliminary injunction is in the public interest as it will give the general public access to natural gas from the Marcellus Shale deposits for heating their homes. That this pipeline will transport 1.7 million decotherms of natural gas to the north east and mid atlantic markets. "Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices."[63] This factor, therefore, also favors Transco.

For all of these reasons, Transco's motion for preliminary injunction is granted.

### c. A bond will be Ordered.

"Rule 65(c) gives the district court wide discretion to set the amount of a bond."[64] There are sufficient safeguards to protect Defendants. If I were to order a bond amount that is lower than the amount ultimately awarded at trial, Defendants

717r(b); *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002) ("The validity and conditions of the FERC Certificate cannot be collaterally attacked in district court."); *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir.1989), cert. denied, 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990) ("Review of the validity of the certificate is the exclusive province of the appropriate court of appeals.").

[62] *Id. citing Tennessee Gas Pipeline Co. v. Massachusetts Bay Transportation Authority,* 2 F.Supp.2d 106, 110 (D.Mass.1998).

[63] E. *Tennessee Nat. Gas Co. v. Sage*, 361 F.3d at 830, *citing Clark v. Gulf Oil Corp.,* 570 F.2d 1138, 1145–46 (3d Cir.1977); *Fla. Power & Light Co. v. Federal Energy Regulatory Comm'n*, 598 F.2d 370, 379 (5th Cir.1979); *Public Serv. Comm'n of Ky. v. Federal Energy Regulatory Comm'n*, 610 F.2d 439, 442–43 (6th Cir.1979).

[64] *New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.,* 697 F. Supp. 2d 415, 441 (W.D.N.Y. 2010), *see also Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412 (3d Cir. 2010).

will be entitled to the higher amount pursuant to Federal Rule of Civil Procedure

71.1. "If the compensation finally awarded to a defendant exceeds the amount

distributed to that defendant, the court must enter judgment against the plaintiff for

the deficiency."[65] "If the gas company's deposit (or bond) is less than the final

compensation awarded, and the company fails to pay the difference within a

reasonable time, it will become a trespasser, and liable to be proceeded against as

such."[66] Objection to the bond amount is overruled here because Plaintiff posting

the bond is "financially capable of satisfying any award of just compensation

above and beyond the bond proposed."[67]

 Joseph Prociak, President and CEO of Defendant Susquehanna Coal

Company, testified at the August 3, 2017 hearing that he values the loss to the

property to be one-hundred million dollars ($100,000,000.00). Accordingly, he

requests a bond for that amount. However, that value represents his valuation of

the **developed** land of this 364 acre parcel in addition to a companion parcel, at

issue in 4:17-CV-00544 totaling 481 acres.

 A bond in the amount of one-hundred million dollars is unreasonable.

Transco is only seeking to condemn a 0.16 acre permanent easement on this

---

[65] Fed. R. Civ. P. 71.1(j)(2).
[66] *Steckman Ridge GP, LLC v. An Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Twp.*, 2008 WL 4346405, at *11 (W.D. Pa. Sept. 19, 2008)
[67] *N. Nat. Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, & Reno Ctys., Kan., as further described herein*, 2011 WL 7491556, at *2 (D. Kan. Nov. 16, 2011).

property. To put the matter in perspective, the permanent easement is a taking of only 0.002% of the total acreage of the property. Moreover, Prociak's value is based on a developed property with an operating coal mine. However, he testified that Susquehanna Coal Company has never mined the property, and may never mine the property. Furthermore, Prociak testified that and he has consistently refused third parties offers to mine the property. Although Defendant has a mining permit, it is currently not bonded, and thus the property cannot presently be mined.

Accordingly, Defendants' demand for a bond of one-hundred million dollars is unsubstantiated; because Defendants did not make another reasonable proposal, I will accept Transco's proposed bond amount of trebling the appraisal value. Transco has appraised the easement at $18,940 and proposed a bond of three times that amount for $57,180.

Finally, Defendants made an oral motion during the August 3, 2017 hearing demanding that compensation be paid prior to entry on the land. This oral motion is denied. The Constitution "does not provide or require that compensation be paid in advance of the occupancy of the land to be taken." [68] "The amount of compensation…[has] no effect on [the gas company's] rights to the easements."[69] But the owner is entitled to reasonable, certain, and adequate provision for

---

[68] *Columbia Gas Transmission, LLC*, 768 F.3d at 315.
[69] *Id.*

obtaining compensation before his occupancy is disturbed."[70] Transco will be ordered to post a surety bond with the Clerk of Court on or before August 16, 2017.

### d. The Order will contain an enforcement mechanism

Transco indicates that both third parties have expressed their intention to engage in civil disobedience. I have the authority and "inherent power to enforce compliance with lawful orders through civil contempt."[71] Defendants and any third parties who are contemplating violating the terms of this Memorandum Opinion and the accompanying Order are on notice that the Order contains an enforcement mechanism so that any person unwise enough to violate its terms shall be haled into Court by the United States Marshal and a contempt hearing conducted.[72]

## III. CONCLUSION

An Order will issue this date granting Plaintiff's Motions for Partial Summary Judgment and for Preliminary Injunction. Plaintiff will be ordered to post a surety bond with the Clerk of Court.

Commencing August 18, 2017, pursuant to the Order of the Federal Regulatory Commission dated February 3, 2017, Plaintiff Transcontinental Gas

---

[70] *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890).
[71] *Cooper v. Aaron*, 358 U.S. 1 (1958); *and see Shillitani v. United States*, 384 U.S. 364 (1966).
[72] *Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990)

Pipe Line Company, LLC is granted access to, possession of and entry to the rights of way allowed under that Order for the above captioned property.   The Order will include an enforcement mechanism to deter those who seek to obstruct Plaintiff.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge